IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | |
|---|---|
| M. DEBRA HAGUE, ) | |
| ) | Civil No. 2:12-CV-00488-BSJ |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OPINION** |
| ) | **& ORDER** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | **FILED** |
| ) | CLERK, U.S. DISTRICT COURT |
| Defendant. ) | March 19, 2013 (2:53pm) |
| ) | DISTRICT OF UTAH |

\* \* \* \* \* \* \* \* \*

Claimant M. Debra Hague appeals the Administrative Law Judge's ("ALJ") order affirming the Commissioner's denial of her application under Title II of the Social Security Act for Disability Insurance Benefits ("DIB"). This court has jurisdiction of her appeal under the Social Security Act (the Act), 42 U.S.C. § 405(g). On February 1, 2013, Wendy W. Fenton appeared on behalf of Ms. Hague, and Michael S. Howard appeared on behalf of the Commissioner. Having considered the parties' briefs, the administrative record, the arguments of counsel, and the governing law, this court now rules that the Commissioner's decision is affimed in part, reversed in part and remanded for the reasons outlined below.

## DISABILITY UNDER THE ACT

Under the Social Security Act, a person is considered disabled if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The impairment must be one that "can be expected to result in death or which has lasted or can be

expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2004); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The process for establishing disability involves a five-step sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4) (2012). However, if a determination of disability can be made under any of the steps, further evaluation is not necessary. *Id.* The ALJ must consider (1) whether the claimant is engaged in substantial gainful activity; (2) suffers from a medically severe impairment or combination of impairments; (3) has a condition that meets, or is medically equal to, one of a number of listed impairments; (4) could return to her past relevant work; and, if not, (5) maintains the residual capacity to perform other work in the national economy. C.F.R. § 404.1520(a)(4). The burden of proof is on the claimant in steps one through four. However, the burden shifts to the Secretary once the claimant has met her burden. *Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988).

## BACKGROUND

Ms. Hague first filed for disability benefits in April 2008. Her claim was initially denied, but was reopened upon reconsideration in October 2009. She alleged disability beginning on August 8, 2005, and her last insured date was on December 31, 2005. The ALJ found that she suffers from severe impairments: left carpal tunnel syndrome, left cubital tunnel syndrome, left radial tunnel syndrome, and history of left complex regional pain syndrome; but the ALJ determined at step four in the sequential analysis that she retains the residual functional capacity to return to her work as a referral clerk. Ms. Hague sought judicial review by filing suit against the Commissioner pursuant to 42 USC § 405(g).

## STANDARD OF REVIEW

This court reviews the ALJ's "decision de novo and independently determines whether the

ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989). This court, however, cannot "reweigh the evidence or substitute [it's] judgement for the Commisioner's." *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006) (citing *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 200)).

## DISCUSSION

Ms. Hague presents four main arguments on appeal: she contends (1) that the ALJ erred as a matter of law in failing to perform a proper analysis at step four in the five-step sequential analysis; (2) that the ALJ erred in assessing Ms. Hague's credibility as a witness; (3) that the ALJ erred by not calling a medical expert under Social Security Ruling 83-20, Program Policy Statement: Title II and XVI: Onset of Disability (PPS-100), 1983 WL 31249 (S.S.A. 1983)("SSR 83-20") to determine the onset date of her disabilities; and (4) that the ALJ erred by not affording any weight to one of her treating physicians. The arguments will be addressed in the order in which they were raised.

*1. Ms. Hague's Residual Functioning Capacity*

Step four in the sequential analysis is itself comprised of three different phases. *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must first evaluate "the claimant's physical and mental residual functional capacity." *Id.* Second, the ALJ must determine "the physical and mental demands of the claimant's past relevant work." *Id.* And last, the ALJ must determine whether the claimant has "the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one…." *Id.* (quoting *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 361 (10th Cir. 1993)).

The ALJ properly identified Ms. Hague's residual functioning capacity ("RFC") in phase one.  The ALJ made specific findings regarding Ms. Hague's RFC, determining that Ms. Hague maintained the capacity to perform light work with the following limitations:

> The claimant can sit 6 of 8 hours and stand 6 of 8 hours.  She can lift 20 pounds occasionally and 10 pounds frequently with her dominant upper extremity and lift 5 pounds with her non-dominant hand.  She can occasionally reach, handle, finger and feel on the left and constantly reach, handle, finger and feel on the right.  She must avoid even moderate exposure to extreme cold and vibration.

At phases two and three, however, the analysis is incomplete.  The ALJ must provide specific findings in phase two concerning the physical and mental demands of claimant's past relevant work.  *Bowman v. Astrue*, 511 F.3d 1270, 1273 (10th Cir. 2008).  For example, the court held in *Bowman* that the ALJ's findings in phase two were insufficient when the ALJ did not account for the claimant's limited use of her left hand.  *Id*.  The court noted that while her past work required constant "handling," the ALJ found that the claimant had only limited use in one hand. *Id.*  The court recognized that while the ALJ could have pursued an inquiry with the vocational expert ("VE") into how this limitation "would affect her ability to perform the required handling activities," no such inquiry and findings were made. *Id.*

Similarly, in the present case, the ALJ noted that the VE, Ms. Layton, testified that the work of a referral clerk is classified as sedentary, semi-skilled work in the Dictionary of Occupational Titles ("DOT").  Under the DOT, the job of a referral clerk requires occasional reaching and handling, and frequent fingering. Dictionary of Occupational Titles (4th Ed., Rev. 1991) 205.367-062.  The ALJ made the specific finding that Ms. Hague was limited to only occasional fingering and handling with her left hand, in phase one, but failed to provide information concerning the impact this would have on her past work in phase three.  Accordingly, the ALJ's conclusion, at phase three, that the claimant's past work "falls within her current

residual functional capacity" and that "any limitations in using her left arm should not interfere significantly with the performance of sedentary work as a referral clerk" lacked the substantial evidence necessary to support the ALJ's findings. *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002); *see also Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999) (holding that the ALJ "has the burden to investigate whether a vocational expert's opinion conflicts with information provided in the Dictionary of Occupational Titles, and elicit an explanation for any inconsistency").

Accordingly, because the ALJ failed to provide specifics concerning the fingering responsibilities of Ms. Hague's prior work, the case must be remanded for further proceedings regarding phases two and three of step four to determine Ms. Hague's residual functioning capacity.

*2. Credibility Assessment*

Ms. Hague next argues that the ALJ erred in determining her credibility by not giving clear reasons for rejecting her opinion. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *McGoffin*, 288 F.3d 1248 at 1254 (10th Cir. 2002). Any factual findings, however, must be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation omitted).

The facts of this case are unlike those in *Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995) where the court held that that ALJ's credibility assessment was inadequate. In *Kepler*, the ALJ merely recited general factors he considered and then stated that the claimant was not credible based on those factors. *Id.* at 390. The ALJ failed to reference any specific evidence from the facts. *Id.* at 390-91. In this case, however, the ALJ specifically cited contradictions in the claimant's

5

testimony, which went against the medical evidence in the record. To satisfy this test, the ALJ need only set forth "the specific evidence he relies on in evaluating the claimant's credibility," and "a formalistic factor-by-factor recitation of the evidence is not necessary." *Qualls*, 206 F.3d at 1372.

    *3. Calling a Medical Advisor*

Next, Ms. Hague argues that the ALJ was required to call a medical advisor to determine the onset date of her disabilities. SSR 83-20 states that an ALJ should consult a medical advisor when the onset of a disability must be inferred. *See* 1983 WL 31249, at *3. This statute has been interpreted by *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006), as meaning that the ALJ "may not make negative inferences from an ambiguous record; rather, it must call a medical advisor pursuant to SSR 83-20." 466 F.3d at 913. Ultimately, the issue "turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Id.* at 912.

In the present case, the ALJ did not err in deciding the case without the aid of a medical advisor. First, the facts in *Blea* are factually distinguishable. In *Blea*, the claimant did not have any medical records during an eighteen-month period, which included his last insured date. *Id.* at 912-13. Accordingly, The ALJ decided the issue by drawing negative inferences to determine the onset date. *Id.* at 912. Here, Ms. Hague has medical records from both before and after the date last insured of December 31, 2005. Because Ms. Hague underwent surgery in August, her medical history around the date last insured is quite extensive. Therefore, the facts in this case are entirely different from those in *Blea* where the medical record was ambiguous and incomplete.

*4. Treating Physician*

Ms. Hague's next argues that the ALJ erred by not giving any weight to the opinion of one of her treating physicians, Troy Hunter, APRN.  As stated in *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004), the ALJ must "give good reasons for the weight assigned to a treating physician's opinion," and, "if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.*

The facts of the present case are easily distinguishable from those of *Robinson*.  In *Robinson*, the ALJ did not expressly state reasons for assigning weight. *Id.* at 1092.  Instead, he only stated that the physician's report was "vague and conclusive." *Id.*  Here, the ALJ rejected the opinion of Nurse Hunter for two reasons, which are stated in the decision.  The first reason is that the claimant was first seen by Nurse Hunter a full year after the alleged onset date.  And second, Nurse Hunter's medical opinion was at odds with that of Dr. Coleman, Ms. Hague's treating surgeon at the date last insured, and with that of Dr. Vanderhooft, who Ms. Hague visited six months following the date last insured.  This explanation is sufficient because the ALJ may reject a treating physician's opinion "on the basis of contradictory evidence." *McGoffin*, 288 F.3d at 1252.

In conjunction with this argument, Ms. Hague argues that the ALJ had the obligation to recontact Nurse Hunter to clarify the medical opinion.  Ms. Hague, however, fails to point to any inadequacies in the medical record that would have required clarification.  While it is solely the obligation of the ALJ to clarify the record in the case of an ambiguity, *White v. Barnhart*, 287 F.3d at 1252, the ALJ did not reject the opinion because it was ambiguous.  Instead, the ALJ states that he rejected the opinion because it was formed based on observations made a year following the date last insured and because it was at odds with every other medical opinion.  Therefore, the ALJ did not need to recontact Nurse Hunter.

For the reasons explained above,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 USC § 405(g), the Commissioner's decision denying Ms. Hague's applications for disability insurance benefits is AFFIRMED IN PART, REVERSED IN PART and REMANDED for further administrative proceedings regarding phases two and three of step four to determine Ms. Hague's residual functioning capacity.

DATED this 19th day of March, 2013

Bruce S. Jenkins
United States Senior District Judge